IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
CASE NO. 5:24-cv-377-BO-RJ

SANDRE ENNIS, *on behalf of himself and all others similarly situated*,

Plaintiff,

v.

CGR FVL D, LLC, COUGAR CDJR HOLDCO, LLC, DEALERSHIP HOLDCO, LLC, MANAGEMENT HOLDCO, LLC, and COUGAR JV SUBSIDIARY, LLC d/b/a HUDSON AUTOMOTIVE GROUP,

Defendants.

**FIRST AMENDED CLASS ACTION COMPLAINT**

**(JURY TRIAL DEMANDED)**

Plaintiff Sandre Ennis ("Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendants CGR FVL D, LLC; Cougar CDJR Holdco, LLC; Dealership Holdco, LLC; Management Holdco, LLC, and Cougar JV Subsidiary, LLC (*d/b/a* Hudson Automotive Group) (collectively, "Defendants"), alleging and stating as follows:

## I. PRELIMINARY STATEMENT.

**1.** Telemarketing calls are intrusive. Many people reasonably object to receiving these calls, which interfere with their lives, tie up their telephone lines, and cause confusion and disruption on their phone records. Faced with growing public criticism of abusive telemarketing practices, the U.S. Congress enacted the Telephone Consumer Protection Act ("TCPA") in 1991. *See* Pub. L. No. 102-243, 105 Stat. 2394 (1991).[1] As Congress explained, the law was enacted in response to consumers' "outrag[e] over the proliferation

---

[1] Codified at 47 U.S.C. § 227; implemented by 47 CFR § 64 – Subpart L.

of intrusive, nuisance calls…from telemarketers;" and sought to balance "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms." *Id*. §§ 2(6); (9).

2. One result of the TCPA was the national Do-Not-Call Registry maintained by the Federal Trade Commission ("FTC"). *See* 47 CFR § 64.1200(c)(2); 16 CFR § 310.4(b)(iii)(B) ("It is an abusive telemarketing act or practice and a violation of this Rule…[to] initiat[e] any outbound telephone call to a person [whose] telephone number is on the [Registry]").

3. In short, if a person wishes to no longer receive telephone solicitations, they can add their telephone number to the Registry; then, the TCPA restricts the telephone solicitations that can be made to that number. *Id*.; *see also* 16 CFR § 310.4(b)(iii)(B).

4. Accordingly, Congress created a private right of action under the TCPA for any person who receives telephone solicitations despite their number being listed on the Do-Not-Call Registry. 47 U.S.C. § 227(b)(3). Under the TCPA, Claimants may seek injunctive relief, monetary damages, or both. *Id*.; *see also* 47 U.S.C. § 227(c)(5) (private right of action for claims arising out of violations of 47 U.S.C. §§ 227(c)(1)-(4)).

5. Following the TCPA, North Carolina implemented similar state-level legislation in 2003: the <u>North Carolina Telephone Solicitations Act</u> ("NCTSA"), N.C.G.S. § 75-100, *et seq*.[2]

6. Like its federal corollary, the NCTSA explicitly prohibits persons and entities from calling residential or mobile telephone numbers that appear in the Do-Not-Call Registry; and provides for a private right of action seeking injunctive relief, monetary damages, or both. *See* N.C.G.S. §§ 75-102(a); 105(b).

7. Accordingly, Plaintiff brings this action to enforce the consumer-privacy provisions of the TCPA and the NCTSA.

---

[2] *See also* N.C.S.L 2003-411.

8. Specifically, Plaintiff alleges that Defendant violated the TCPA and the NCTSA by knowingly making telemarketing calls in the form of text messages to the telephone numbers of Plaintiff and the putative Class, all of which are—and, at all relevant times, have been—listed on the Do-Not-Call Registry: (1) without the written consent of Plaintiff or any member of the putative Class; and/or (2) after they had requested to no longer receive such communications from Defendants.

## II. THE PARTIES.

9. Plaintiff is a citizen and resident of North Carolina who is neither an infant, incompetent, nor in the military service of the United States.

10. Plaintiff is a *person* within the meaning of the TCPA; and a *telephone subscriber* under the NCTSA. *See* 47 U.S.C. § 153(39); N.C.G.S. § 75-101(11).

11. Defendant CGR FVL D, LLC ("CGR LLC") is a limited liability company organized and existing under the laws of North Carolina with its principal place of business located in Charleston, South Carolina.

12. Defendant Cougar CDJR Holdco, LLC ("Cougar Holdco") is a limited liability company organized and existing under the laws of Delaware with its principal place of business located in Charleston, South Carolina.

13. Dealership Holdco, LLC, ("Dealership Holdco") is a limited liability company organized and existing under the laws of Delaware with its principal place of business located in Charleston, South Carolina.

14. Management Holdco, LLC ("Management Holdco") is a limited liability company organized and existing under the laws of Delaware with its principal place of business located in Charleston, South Carolina.

15. Cougar JV Subsidiary, LLC (*d/b/a* Hudson Automotive Group) ("Cougar JV"), is a limited liability company organized and existing under the laws of Delaware with its principal place of business located in Charleston, South Carolina.

16. Upon information and belief, all Defendants are part of a singular business enterprise operating as "Hudson Automotive Group."

### III. JURISDICTION & VENUE.

17. The foregoing allegations are incorporated by reference and realleged herein.

18. **Subject Matter Jurisdiction:** This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227, *et seq*.

19. **Personal Jurisdiction:** This Court has general personal jurisdiction over Defendants because they regularly do business in this District.

20. **Venue:** Venue is proper under 28 U.S.C. § 1391(b)(2)—the calls and texts at issue were planned and sent within this District; thus a substantial part of the events giving rise to the claim occurred within this District.

### IV. FACTUAL ALLEGATIONS.

21. The foregoing allegations are incorporated by reference and realleged herein.

    **A. Background.**

22. As explained *supra*, the TCPA and NCTSA protect consumers from abusive telemarketing practices using, *inter alia*, the National Do-Not-Call Registry. *See generally* 47 CFR § 64.1200(c)(2); N.C.G.S. § 75-102(a).

23. In addition, regulations promulgated by the Federal Communications Commission ("FCC") expressly require persons and entities engaging in telemarketing to maintain an *internal* do-not-call list. *See* 47 CFR § 64.1200(d).

24. Specifically, to engage in telephone or text solicitations, an entity's internal do-not-call list procedures must satisfy the minimum requirements,[3] including:

   a. The entity "must have a written policy, available upon demand, for maintaining [an internal] do-not-call list," 47 CFR § 64.1200(d)(1);

   b. All personnel engaged in making telephone calls "must be informed and trained in the existence and use of the do-not-call list," *Id*. § (d)(2);

   c. When the entity "receives a request from a residential telephone subscriber not to receive calls," it "must record the request and place the subscriber's name, if provided, and telephone number on the [internal] do-not-call list at the time the request is made," and thereafter "must honor [the] do-not-call request within a reasonable time [not to] exceed 30 days from the date of such request," *Id*. § (d)(3); and

   d. The entity "must maintain a record of a…request not to receive further calls," and a "request must be honored for [five] years from the time [it] is made." *Id*. § (d)(6).

25. If an entity fails to satisfy any of the requirements, it is <u>not</u> entitled to engage in telemarketing and violates the law by doing so, even if it satisfies the other requirements.

26. Moreover, courts across the United States have held that the TCPA provides a private right of action for claims premised on violations of the implementing regulations, including but not limited to claims arising out of the internal do-not-call list requirements under 47 CFR § 64.1200(d). *See, e.g., Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 383 (2012) (holding that, since Congress "enacted detailed, uniform, federal substantive prescriptions and provided for a regulatory regime administered by" the FCC, "TCPA liability thus depends

---

[3] *See generally* 47 CFR § 64.1200(d).

on violation of a federal statutory requirement [under 47 U.S.C. § 227(b)(3)], or an FCC regulation [under 47 U.S.C. § 227(c)(5)]").

B. **Plaintiff's Factual Allegations**.

27. Plaintiff's telephone number, 910-736-XXXX, is a residential, non-commercial telephone number not associated with any business. In other words, Plaintiff uses the number exclusively for personal, residential, and household reasons.

28. This action arises out of Plaintiff's visits to the "Fayetteville Dodge Ram" car dealership located at 436 North McPherson Church Road in Fayetteville, North Carolina (the "Dealership"), which is collectively owned and operated by Defendants.

29. Defendants send text messages to consumers, including Plaintiff, promoting their vehicle sales and the Dealership.

30. On or about February 24, 2024, Plaintiff first visited the Dealership with intent to lease a vehicle. When the Plaintiff arrived to Defendants' Dealership, Defendants' employee texted the Plaintiff from two separate phone numbers and asked him to reply with a "Yes."



31. On February 24, 2024, Plaintiff was approved to lease a vehicle from Defendants.

32. However, upon information and belief, the bank did not approve the transaction because Defendants either purposefully or negligently failed to properly submit the paperwork. This was, of course, frustrating for Plaintiff.

33. As a result, on or about March 2, 2024, Plaintiff was required to return to the Dealership to return the Vehicle. Thereafter, Plaintiff had no further business to conduct with the Dealership or with Defendants, including any service or sales appointments. In fact, Plaintiff never had any appointments or servicing appointments with Defendants.

34. Although he had no appointments scheduled, on March 3, 2024, Defendants texted Plaintiff about an alleged "service appointment." Two days later, on March 5, Defendants texted Plaintiff again. Plaintiff demanded Defendants stop texting him.



35. On March 13, 2024, Plaintiff received another text message from Defendants about a non-existent service appointment. Plaintiff again demanded that Defendants stop texting him and was told (falsely) that Plaintiff has been successfully unsubscribed.

36. Plaintiff, of course, expected to receive no further communications from Fayetteville Dodge Ram.

37. Indeed, the unsubscribe confirmation was not limited to the service department, and Plaintiff did not limit his "Stop" request to the service department only.

38. However, on March 19, 2024, Plaintiff received another text message from Defendants about a non-existent appointment. Plaintiff again demanded that Defendants stop texting him and was again told (falsely) that he had been successfully unsubscribed.[4]

---

[4] Plaintiff is not seeking telemarketing damages for the March 13 or 19 texts.



39. On March 29, 2024, Plaintiff received a text message from Defendants about test driving a few vehicles to "know the perfect fit." Plaintiff again demanded that Defendants stop texting him.

40. On April 10, 2024, Plaintiff received another text message from Defendants to schedule a "VIP appointment." Plaintiff again demanded that Defendants stop texting him.




Page **9** of **20**

**41.** On April 13, 2024, Plaintiff received another message from Defendants, which he ignored.

**42.** On April 22, 2024, Plaintiff received another message from Defendants asking if he was still interested in a vehicle. Plaintiff reiterated, again, that he wanted the messages to cease.



**43.** Each of these text messages sent to Plaintiff from Defendants were sent for the purpose of soliciting or encouraging the purchase or rental of, or investment in, property, goods, or services or for the purposes of obtaining or providing information that will or may be used for that purpose.

**44.** Plaintiff never had any vehicle that was ever scheduled for servicing with the Dealership—the March 13 text about servicing was merely a ploy by Defendants for the purpose of soliciting or encouraging Plaintiff to purchase property, goods, or services or for the purposes of obtaining or providing information that will or may be used for that purpose.

45. At no point after March 2, 2024 did Plaintiff ever indicate a willingness to interact with Defendants in any capacity, including vehicle servicing or vehicle sales.

46. Nonetheless, Plaintiff continuously received the text messages.

47. Plaintiff and the Class have been harmed by the acts of Defendants because their privacy has been violated and they were harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

48. Moreover, Plaintiff was frustrated, angry, annoyed, and felt harassed by each of these text messages—especially after making it abundantly clear that the calls were unwanted and unwelcome.

C. **Defendants' Singular Enterprise.**

49. As alleged *supra*, all Defendants are part of a singular business enterprise operating as "Hudson Automotive Group." The allegation is bolstered by the information provided by Defendants to the Secretaries of State relevant to this action (including the North Carolina Secretary of State) and in the Financial Disclosures filed by Defendants RP LLC, CGR LLC, and Cougar Holdco. [DE 13; 14; 15].

50. First, Defendant Cougar JV presently does business under the name "Hudson Automotive Group," and previously-dismissed Defendant Ranella's original name was "Hudson Automotive Group, Inc."

51. Moreover, many of the Defendants have the same address for their headquarters and/or principal place of business: 100 Coastal Drive, Suite 400, in Charleston, South Carolina.

52. David Hudson—the President and CEO of "Hudson Automotive Group"—is listed as a manager of Defendant RP LLC and the registered agent for Defendant Cougar. Per the

information provided to the various Secretaries of State relevant to this action, Mr. Hudson's address is also 100 Coastal Drive, Suite 400, in Charleston, South Carolina.

53. Per the information provided by Defendants RP LLC, CGR LLC, and Cougar Holdco in their respective Financial Disclosures filed in this action, Defendants Dealership Holdco and Cougar JV are the "parent," "grandparent," and/or "great-grandparent" entities for Defendants RP LLC, CGR LLC, and Cougar Holdco. [DE 13; 14; 15].

54. Additionally, Defendant Cougar Holdco is listed as a member of Defendant CGR LLC with the North Carolina Secretary of State; and as the "parent" of Defendant CGR LLC on the Financial Disclosure. [DE 14].

55. Upon information and belief, Management Holdco maintains and manages certain software and communication platforms utilized by Hudson Automotive Group dealerships to contact Plaintiff and putative class members.

56. Upon information and belief, the business of work in which Fayetteville Dodge Ram was engaged in at all times alleged herein was within the scope of the authority provided by Hudson Automotive Group, or was done at the direction or control of Hudson Automotive Group, and was intended to accomplish the purposes of Hudson Automotive Group.

57. Upon information and belief, Fayetteville Dodge Ram regularly conducted business and held itself out to the public and the automobile industry collectively using the trade name to refer to all of their dealerships, "Hudson Automotive Group."

58. Upon information and belief, with respect to all actions and decisions pertinent to this action, Defendants have acted as a single entity.

### V. CLASS ACTION ALLEGATIONS.

59. The foregoing allegations are incorporated by reference and realleged herein.

60. Plaintiff brings this action on behalf of himself and the following classes (the "Class") pursuant to Federal Rule of Civil Procedure 23:

> **TCPA Class**: All persons in the United States who (1) received more than one telemarketing call or text message from or on behalf of Defendants encouraging the purchase of Defendants' goods or services; (2) within a twelve-month period; (3) despite requesting that their telephone numbers were no longer called at least 31 days prior to the first call or text message; (4) at any time within the four years preceding this action.

> **NCTSA Class**: All North Carolina residents who subscribe to a residential telephone service from a local exchange company, a competing local provider certified to do business in North Carolina, or a wireless telephone company; or individuals living or residing with individual North Carolina residents who: (a) received a "telephone solicitation" from Defendants, as defined by N.C.G.S. § 75-101(9); (b) after communicating to the Defendants a desire to receive no further telephone solicitations to their number; (c) at any point within the four-year period preceding the filing of Plaintiff's Complaint.

61. **Numerosity:** The exact number of members of each Class is unknown. However, given the *en masse* nature of telemarketing, the Classes are believed to consist of hundreds—if not thousands—of people, thus individual joinder in this case is impracticable. Upon information and belief, all individual members of the Classes can be easily identified through Defendants' business records, or those of their agents.

62. **Typicality:** Plaintiff's claims are typical of the Class members in that Plaintiff, like all other Class members, sustained similar injuries and suffered similar damages arising out of Defendants' telemarketing calls and text messages, sent by Defendants in furtherance of their uniform unlawful conduct.

63. **Adequacy:** Plaintiff will fairly and adequately represent and protect the interests of each Class. First, Plaintiff has retained counsel competent and experienced in complex class actions to vigorously prosecute this Action on behalf of the Class. Second, Plaintiff has no

interests in conflict with or antagonistic to those of each Class. Lastly, Defendants have no defenses unique to Plaintiff.

64. **Commonality and Predominance:** There are many questions of law and fact common to the claims of Plaintiff and each Class, and those questions predominate over any questions that may affect individuals. Such common questions include, *inter alia*:

    a. Whether Defendants should be held liable for violations on their behalf;

    b. Whether Defendants' sent telephone solicitation;

    c. Whether Defendants' trained their employees to utilize telephone solicitations after requests to stop;

    d. Whether Defendants sent text messages after individuals had requested to no longer receive such messages; and

    e. Damages, including whether any violations were performed willfully or knowingly, such that Plaintiff and the other Class members are entitled to treble damages under 47 U.S.C. § 227(c)(5).

65. **Superiority:** Class action treatment is superior to the alternatives for the fair and efficient adjudication of this controversy. Such treatment will permit many similarly situated persons to prosecute their common claims in a single form simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would entail. There are hundreds—if not thousands—of Class members, such that joinder of all members is impracticable.

66. In addition to satisfying the prerequisites of Rule 23(a), Plaintiff satisfies the requirements for maintaining a class action under Rule 23(b) because:

a. The prosecution of separate actions by the individual Class members would create a risk of inconsistent or varying adjudication which would establish incompatible standards of conduct for Defendants;

b. The prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests;

c. Defendants have acted or refused to act on grounds that apply generally to the proposed Class, thereby making final injunctive relief or declaratory relief herein appropriate with respect to the proposed Class as a whole; and

d. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## VI.  CAUSES OF ACTION.

**FIRST CAUSE OF ACTON**
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT,**
**47 U.S.C. § 227,** *et seq.*

67. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

68. Defendants made numerous calls and/or sent numerous text messages for telemarketing purposes to the phone numbers of Plaintiff and the Class.

69. However, in direct violation of 47 CFR § 64.1200(d), and upon information and belief, at no point did Defendants:

a. Maintain or implement an internal Do-Not-Call list;

b. Maintain or implement any written policy regarding an internal Do-Not-Call list;

c. Train or inform their personnel on the existence or use of an internal Do-Not-Call list;

d. Record and honor consumers' requests to be placed on an internal Do-Not-Call list within a reasonable time not to exceed 30 days from the receipt of each such request.

70. Instead, Defendants ignored the requests they received and consistently made at least two telephone calls or text messages to Plaintiff and the Class members within a twelve-month period in violation of the applicable laws and regulations.

71. The Defendant acknowledged receipt of the Plaintiff's Do Not Call request but still continued to contact her.

72. The Plaintiff was annoyed, frustrated, and angered by the subsequent text messages, which were an invasion of privacy. The Plaintiff felt harassed by these subsequent text messages.

73. Each of these text messages made to Plaintiff and the Class members after requests to stop violated the TCPA.

74. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class are entitled to statutory damages totaling up to $500.00 per telephone call or text message; in addition to treble damages of up to $1,500.00 per telephone call or text message, pursuant to 47 U.S.C. § 227(c)(5).

## SECOND CAUSE OF ACTON
## VIOLATIONS OF THE NORTH CAROLINA
## TELEPHONE SOLICITATIONS ACT,
## N.C.G.S. § 75-101, *et seq.*

75. The foregoing allegations are hereby reincorporated by reference as if fully restated herein.

76. Each Defendant is a *telephone solicitor* under the NCTSA. *See* N.C.G.S. § 75-101(10).

77. Plaintiff is a *telephone subscriber* under the NCTSA. *See* N.C.G.S. § 75-101(11).

78. Each call and text message made by Defendants to Plaintiff and all members of the putative Class is a *telephone solicitation* as defined by the NCTSA. *See* N.C.G.S. § 75-101(9).[5]

79. A violation of the NCTSA occurs when a telephone solicitor makes "a telephone solicitation to a telephone subscriber's telephone number [after] the telephone subscriber previously has communicated to the telephone solicitor a desire to receive no further telephone solicitations…" N.C.G.S. § 75-102(b).

80. Defendants violated the NCTSA by making telephone solicitations to Plaintiff and putative class members after they communicated to the telephone solicitor a desire to receive no further telephone solicitations from the telephone solicitor to that number.

81. A violation of the NCTSA occurs if the telephone subscriber requests to be taken off the contact list of the telephone solicitor and the telephone solicitor fails to remove the telephone subscriber's name and telephone number from the contact list of the telephone solicitor and stop calling the telephone subscriber within 30 business days. N.C.G.S. § 75-102(c)(3).

82. Defendants violated the NCTSA by continuing to make telephone calls to Plaintiff and putative class members more than 30 days after having communicated to the telephone solicitor a desire not to receive additional telephone calls.

83. At all relevant times, Defendants continued to contact Plaintiff and putative Class members after Plaintiff and putative Class members communicated to Defendants a desire to receive no further telephone solicitations.

---

[5] Each call and text message made by Defendants to Plaintiff and the Class can also be described as an *unsolicited telephone call* as defined by the NCTSA. *See* N.C.G.S. § 75-101(12).

84. The Plaintiff was annoyed, frustrated, and angered by the subsequent text messages. The Plaintiff felt harassed by these subsequent text messages.

85. The penalty for violating the NCTSA is $500.00 for the first violation; $1,000.00 for the second violation; and $5,000.00 for any subsequent violations. N.C.G.S. § 75-105(a)(1).

86. As a direct proximate result of Defendant's conduct, Plaintiff and the putative Class have been damages damaged and are entitled to recover all amounts owed to them under the NCTSA.

## VII. PRAYER FOR RELIEF.

**WHEREFORE,** Plaintiff, individually and on behalf of the putative Class, respectfully prays the Court for the following relief:

a. Certify the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure;

b. Name Plaintiff as Class Representative and their counsel as Class Counsel;

c. Adjudge that Defendant violated the TCPA and the NCTSA;

d. Adjudge that Defendant's violations of the TCPA and the NCTSA were willful;

e. Award Plaintiff and Class actual, statutory, and treble damages as applicable under the TCPA and the NCTSA;

f. Award injunctive relief prohibiting Defendant from continuing to make telephone solicitations to consumers in violation of the TCPA and the NCTSA;

g. Award attorneys' fees and costs to Plaintiff and the Class;

h. Award Plaintiff and the Class pre-judgment and post-judgment interest at the highest legal rate provided by law;

i. Grant Plaintiff's demand for a trial by jury on all issues so triable; and

j. Award Plaintiff and the Class such other and further relief as this court may deem just and

proper.

Respectfully submitted, this the 11th day of October, 2024.

**MAGINNIS HOWARD**

/s/ *Karl S. Gwaltney*
KARL S. GWALTNEY
N.C. State Bar No. 45118
7706 Six Forks Road, Suite 100
Raleigh, North Carolina 27615
Tel:    919-526-0450
Fax:   919-882-8763
kgwaltney@carolinalaw.com

*Local Rule 83.1 Counsel for Plaintiff*


**PARONICH LAW, P.C.**

/s/ *Anthony I. Paronich*
ANTHONY I. PARONICH
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel:    617-485-0018
Fax:   508-318-8100
anthony@paronichlaw.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE.

This is to certify that a copy of the foregoing **FIRST AMENDED CLASS ACTION COMPLAINT** was filed with the Clerk of Court using the CM/ECF system which will send electronic notification of this filing to all parties having entered an appearance in this matter

This the 11th day of October, 2024.

/s/ *Karl S. Gwaltney*
KARL S. GWALTNEY
**MAGINNIS HOWARD**

*Local Rule 83.1 Counsel for Plaintiff*